UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HAGGAR CLOTHING CO., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:09-cv-0802-M |
| | § | |
| SAI LAKSHMI INDUSTRIES PVT. LTD. | § | |
| and HARESH MIRPURI, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' Motions to Dismiss under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) [Docket Entry #5]. For the reasons explained below, the Motion to Dismiss for lack of personal jurisdiction is **DENIED**, and the Motion to Dismiss for failure to state a claim is **DENIED** in part and **GRANTED** in part.

### Background and Procedural History

Plaintiff Haggar Clothing Co. ("Haggar"), a Texas corporation, markets, sells and distributes apparel and accessories bearing Haggar trademarks in select department stores and in company owned retail stores throughout the United States. In 2007, Haggar placed purchase orders with Defendant Sai Lakshmi Industries Pvt. Ltd. ("SLI"), an apparel manufacturer based in Bangalore, India, for several types of trousers bearing the Haggar trademarks. Haggar asserts that on or about April 28, 2008, without Haggar's knowledge or consent, and despite full knowledge and notice of Haggar's intellectual property rights, SLI accepted an order from S.J. Clothing LLC ("S.J. Clothing"), an unrelated non-party, for the trousers originally ordered by

Haggar.[1] SRI delivered this order to S.J. Clothing without permission or authorization from Haggar. Haggar further alleges that Mirpuri, a nonresident foreign national and the Executive Director of SLI, supervised and arranged for the sale of the infringing goods to S.J. Clothing.[2]

On April 30, 2009, Haggar brought suit against SLI and Mirpuri for trademark infringement, trademark counterfeiting, unfair competition and dilution under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, as well as for trademark infringement and unfair competition under Texas state law. On May 29, 2009, Defendants moved to dismiss the claims, asserting that this Court lacks personal jurisdiction over Mirpuri and that Haggar has failed to state a claim upon which relief can be granted.

## Analysis

I. 12(b)(2) Motion to Dismiss

  A. Legal standard

A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the long arm statute of the forum state confers personal jurisdiction over that defendant, and (2) the exercise of jurisdiction is consistent with due process under the United States Constitution.[3] Because the Texas long arm statute is commensurate with the limits of due process, the Court need only determine whether assertion of personal jurisdiction satisfies due process.[4]

The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional

---

[1] *See* Haggar's Complaint at 7.
[2] *See id.* at 8.
[3] *See Latshaw v. Johnston,* 167 F.3d 208, 211 (5th Cir. 1999).
[4] *See id.* (citing TEX. CIV. PRAC. &REM. CODE ANN. § 17.041 *et seq.* (Vernon 1997) (Texas long-arm statute); *Schlobohm v. Schapiro*, 748 S.W.2d 355, 357 (Tex. 1990)).

notions of fair play and substantial justice."[5] To satisfy due process, the defendant's conduct in connection with the forum state must be such that he "should reasonably anticipate being haled into court there."[6]

There are two categories of personal jurisdiction: general and specific. General jurisdiction exists when a defendant's contacts with the forum state are "continuous and systematic," allowing a court to exercise jurisdiction over that defendant for causes of action unrelated to the defendant's connections to the state.[7] For specific jurisdiction to exist, the defendant must have "purposefully directed" its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there, and the litigation must result from alleged injuries that "arise out of or relate to" the defendant's activities directed at the forum.[8]

When personal jurisdiction is challenged without an evidentiary hearing, the nonmoving party must first make a *prima facie* showing of jurisdiction.[9] The court must accept as true the non-movant's allegations and resolve all factual disputes in its favor.[10] The court is not required, however, to accept conclusory allegations as true, even if they remain uncontradicted.[11] In determining whether the party has made a *prima facie* case, the court may consider affidavits, interrogatories, depositions, oral testimony, or any other recognized discovery method.[12]

If the nonmovant can establish minimum contacts, the burden shifts to the movant to demonstrate that the exercise of jurisdiction would violate traditional notions of fair play and

---

[5] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 316, 320 (1945)).
[6] *World-Wide Volkswagen*, 444 U.S. at 297.
[7] *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n.9 (1984) (citations omitted).
[8] *Burger King*, 471 U.S. at 472 (citations omitted).
[9] *See Luv n' Care, Ltd. v. Insta-Mix, Inc..,* 438 F.3d 465, 469 (5th Cir. 2006) (internal citations omitted).
[10] *See id.*
[11] *See Panda Brandywine Corp. v. Potomac Elec. Power Co.,* 253 F.3d 865, 869 (5th Cir. 2001) (citations omitted).
[12] *See Stuart v. Spademan,* 772 F.2d 1185, 1192 (5th Cir. 1985) (citation omitted).

substantial justice.[13] In making this determination, the court examines "(1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies."[14]

    B.  Discussion

The record does not establish that Mirpuri's contacts with Texas are continuous, systematic, and substantial. Therefore, the Court determines that it lacks general personal jurisdiction over Mirpuri, and instead focuses on whether Haggar has alleged a *prima facie* case for specific personal jurisdiction over Mirpuri.

Mirpuri argues that, under the corporate shield doctrine, "jurisdiction can generally not be predicated upon jurisdiction over a defendant corporation."[15] However, the Fifth Circuit has held that an individual can be held liable for *his own* infringing actions, even if they are committed on behalf of a corporation.[16] Haggar asserts that Mirpuri, in addition to being SLI's Executive Director, has personally "engaged in tortious conduct within the state of Texas."[17] The corporate shield doctrine therefore does not apply, because Haggar does not posit that jurisdiction over Mirpuri is solely predicated upon jurisdiction over SLI.[18]

Haggar pleads the following specific facts to supports its allegation of jurisdiction:

---

[13] *Wien Air Alaska, Inc. v. Brandt,* 195 F.3d 208, 215 (5th Cir. 1999) (citation omitted).
[14] *Berry v. Lee*, 428 F. Supp. 2d 546, 557 (N.D. Tex. 2006) (Fitzwater, J.) (citing, *inter alia*, *World-Wide Volkswagen*, 444 U.S. at 292).
[15] *See* Defendants' Motions to Dismiss at 4.
[16] *See Mead Johnson & Co. v. Baby's Formula Service, Inc.*, 402 F.2d 19, 23 (5th Cir. 1968) ("There can be no doubt but that a trademark, like a patent, can be infringed by an individual. It is infringed when an individual performs the act or does the things that the patent or trademark law protects against. The fact that the persons thus acting are acting for a corporation also, of course, may make the corporation liable under the doctrine of respondeat superior. It does not relieve the individuals of their responsibility."); *see also Interstate Battery Sys., Inc. v. Wright*, 811 F. Supp. 237, 244 n.5 (N.D. Tex. 1993) (Kendall, J.) (noting that the individual defendant "is personally liable for the acts of counterfeiting, trademark infringement and unfair competition because he personally participated in and directed the occurrence of the acts giving rise to these causes of action") (citing *Mead Johnson*, 402 F.2d at 23)).
[17] *See* Haggar's Complaint at 3.
[18] *See Stuart*, 772 F.2d at 1197 n.11 (citations omitted).

- Mirpuri knew that SLI was not authorized to sell garments with the Haggar trademarks;

- Mirpuri nevertheless intentionally arranged for, approved, and supervised the sale of the infringing goods to S.J. Clothing;

- Mirpuri participated in an arbitration between Haggar and SLI in Dallas, Texas during the course of this litigation in which he admitted to having read the terms and conditions of Haggar's purchase orders with SLI; and

- Mirpuri may be served with process at a Dallas, Texas location.[19]

When a nonresident defendant commits a tort within a state, or commits an act outside the state that causes tortious injury within the state, that tortious conduct amounts to sufficient minimum contacts with the state to permit federal courts within that state to exercise personal jurisdiction over the tortfeasor.[20] Haggar has sufficiently alleged that Mirpuri was involved in tortious activity, and that, as a Texas corporation, Haggar was injured by the tortious activity within the state of Texas.[21]

Haggar has thus established a *prima facie* showing of specific personal jurisdiction over Mirpuri through Mirpuri's minimum contacts with the state of Texas. The burden then shifts to Mirpuri to demonstrate that the exercise of personal jurisdiction over him would not comport with "traditional notions of fair play and justice." Mirpuri's sole argument in this regard is that the assertion of personal jurisdiction would "drag a foreign national into a court of law in the

---

[19] The record shows that Mirpuri was in fact served in person at the Dallas, Texas location.

[20] *See Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 787 (N.D. Tex. 2008) (Fitzwater, C.J.) (quoting *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999)). Haggar's Lanham Act claims are sufficiently tort-like to come under this analysis. *See, e.g., Interstate Battery*, 811 F. Supp. at 244 n.5, 245 (describing counterfeiting, trademark infringement and unfair competition variously as torts and as tort-like); *Payne v. Kristofferson*, 631 F. Supp. 39, 43 (N.D. Ga. 1985) (citing *Burwood Products Co. v. Marsel Mirror and Glass Prods. Inc.*, 468 F. Supp. 1215, 1218 (N.D. Ill. 1979)) (noting that "copyright infringement sounds in tort"); *but see Rolls-Royce*, 576 F. Supp. 2d at 787 (stating that a claim under the Lanham Act is not a tort).

[21] *See Rolls-Royce*, 576 F. Supp. 2d at 787 (finding that the harm to a corporate plaintiff injured by a Lanham Act violation occurs at its corporate headquarters, and thus the tort of misappropriation is deemed to have taken place in that state).

United States from halfway across the world."[22] But Mirpuri has purposefully availed himself of the privileges of conducting business in Texas such that he should reasonably have anticipated being haled into court in Texas. Furthermore, this litigation results from alleged injuries that "arise out of or relate to" his allegedly tortious activities directed at a Texas corporation. Mirpuri has already been personally served with process in Dallas, Texas, and has participated in arbitration in Dallas. Mirpuri has failed to make a "compelling case" that the assertion of jurisdiction over him "offends traditional notions of fair play and substantial justice."[23] Therefore, Mirpuri's Motion to Dismiss is **DENIED**.

II.     12(b)(6) Motion to Dismiss

    A. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." As the Supreme Court held in *Bell Atlantic Corp. v. Twombly*[24] and reaffirmed in *Ashcroft v. Iqbal*,[25] the pleading standard Rule 8 announces does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support.[26] While a court must accept all of the plaintiff's allegations as true, it is not bound to accept as true "a legal conclusion couched as a factual allegation."[27] A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not do.[28] To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

---

[22] *See* Defendants' Motion to Dismiss at 4; Defendants' Reply at 3.
[23] *See Wien Air Alaska v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999).
[24] 550 U.S. 544 (2007).
[25] 129 S. Ct. 1937 (2009).
[26] *Id.* at 1949 (citations omitted).
[27] *Id.* at 1949-50 (quoting *Twombly*, 550 U.S. at 555).
[28] *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

on its face.[29] A claim has facial plausibility when the court can draw a reasonable inference from the pleadings that the defendant is liable for the misconduct alleged.[30] Where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the pleader is plausibly entitled to relief.[31]

    B. Discussion

        *1. Federal Trademark Infringement, 15 U.S.C. § 1114(1)*

Haggar's statutory causes of action are based on the Lanham Act, 15 U.S.C. § 1051 *et seq.* The Lanham Act defines a trademark as "any word, name, symbol, or device, or any combination thereof, used by a person . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown."[32]

To prevail on a claim of trademark infringement under the Lanham Act, the plaintiff must prove that (1) it is the owner of a registered mark and (2) the defendant's use of the mark creates a likelihood of confusion, mistake, or deception.[33] Additionally, the plaintiff must prove that the defendant used the plaintiff's mark in commerce—that is, "in connection with the sale, offering for sale, distribution, or advertising of any goods or services."[34]

Defendants do not dispute that Haggar has valid, registered trademarks or that the trademarks were used in commerce. Neither do they deny that they sold trousers bearing the Haggar trademarks without Haggar's knowledge or consent and without Haggar's inspection or approval of the quality of the trousers. Rather, Defendants argue that there is no likelihood of

---

[29] *Id.* at 570.
[30] *See Twombly*, 550 U.S. at 556.
[31] Fed. Rule Civ. P. 8(a)(2); *Iqbal*, 129 S. Ct. at 1950.
[32] 15 U.S.C. § 1127 (2006).
[33] *See id.* § 1114(1); *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 309 (5th Cir. 2008).
[34] 15 U.S.C. § 1114(1).

confusion in the marketplace because the goods sold were "genuine goods, bearing genuine trademarks."[35]

As recognized by the Fourth and Ninth Circuits, as well as by various district courts, the general rule is that "trademark law does not apply to the sale of genuine goods bearing a true mark, even if the sale is without the mark owner's consent."[36] In those decisions that find trademark infringement, the linchpin element is the existence of some defect, or potential defect, in the product itself that the customer would not readily be able to detect.[37]

In *Shell Oil Co. v. Commercial Petroleum, Inc.*,[38] the defendant distributor was prohibited from selling bulk oil under Shell trademarks because the distributor did not observe the strict tank and line cleaning requirements that Shell required of its authorized distributors. These requirements insured that Shell-trademarked oil was not degraded by residue impurities in the tanks and lines of the distributors before it was sold as "Shell oil" to customers.[39]

In *El Greco Leather Products Co., Inc. v. Shoe World, Inc.*,[40] the defendant discount shoe retailer bought shoes bearing the plaintiff's trademark from a Brazilian manufacturer who was under contract with the plaintiff. The manufacturer sold the shoes to the defendant when the plaintiff cancelled the order due to late delivery. The Second Circuit held that the shoes were not truly "genuine" because they had not undergone the careful quality inspection that was normally required by the plaintiff before it sold its shoes in the United States.[41]

---

[35] *See* Defendants' Reply at 5.
[36] *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.*, 988 F.2d 587, 590 (5th Cir. 1993) (quoting *Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104, 107 (4th Cir. 1991) (citing *NEC Elecs. v. CAL Circuit Abco*, 810 F.2d 1506 (9th Cir. 1987))).
[37] *Id.* at 591.
[38] 928 F.2d 104 (4th Cir. 1991).
[39] *See id.* at 107.
[40] 806 F.2d 392 (2d Cir. 1986).
[41] *See id.* at 395.

Similarly, in *Adolph Coors Co. v. A. Genderson & Sons, Inc.*,[42] the court found that the Coors beer sold by the defendant distributor was not "genuine" Coors beer because the distributor did not maintain the careful refrigeration requirements mandated by Coors in transporting and storing their beer. Coors beer contained no preservatives, and it could deteriorate if allowed to sit unrefrigerated for long periods of time.[43] The court held that "[t]he public is deceived when one person sells an inferior product of another as the other's superior product."[44]

The oil, shoes, and beer in *Shell*, *El Greco*, and *Coors* all contained or could potentially have contained a latent product defect due to the distributor's failure to observe the manufacturer/trademark owner's rigorous quality control standards. The fact that the distributors in those three cases were unauthorized, whereas SLI was an authorized Haggar manufacturer, does not change the analysis—it merely confirms that SLI should have been aware of Haggar's quality control procedures as set forth in its purchase orders. Haggar has pled that it established these procedures to guarantee that the quality of merchandise produced and sold under its trademarks meets its standards.[45] Haggar further alleges that it rejected numerous SLI products manufactured around the same time as the trousers, and cancelled orders from SLI, due to "serious quality defects."[46]

Haggar alleges that SLI's unauthorized use of its trademarks is likely to cause confusion or deceive consumers "at least as to some affiliation, connection or association" of SLI's uninspected trousers with Haggar.[47] A consumer buying the trousers manufactured by SLI and

---

[42] 486 F. Supp. 131 (D. Colo. 1980).
[43] *See id.* at 134-37.
[44] *Id.* at 137.
[45] *See* Haggar's Complaint at 6.
[46] *See id.* at 8.
[47] *See* Haggar's Complaint at 9.

bearing the Haggar trademarks would not necessarily be aware of the possibly defective condition of the product, and could thereby be confused or deceived as to the nature and quality of Haggar's true approved product.

Haggar's factual allegations, taken as true, state a claim to relief that is plausible on its face. Therefore, the motion to dismiss Haggar's trademark infringement must be denied.

*2. Federal Trademark Counterfeiting, 15 U.S.C. § 1114(1)*

To state a claim for trademark counterfeiting, a plaintiff must allege that: (1) defendants infringed a registered trademark in violation of § 1114(1)(a), and (2) intentionally used the trademark knowing it was a counterfeit, as the term counterfeit is defined in § 1116.[48] A counterfeit mark does not include any mark that the manufacturer was authorized to use, at the time of manufacture, by the holder of the right.[49] Defendants allege, and Haggar does not contest, that at the time the trousers were manufactured, SLI was an authorized licensee of Haggar and was given the right to place Haggar's trademarks on the trousers that SLI contracted to produce for Haggar.[50] Therefore, Haggar's allegations are insufficient to state a claim for counterfeiting under the Lanham Act. Defendants' motion to dismiss the counterfeiting claim is granted.

*3. Unfair Competition, 15 U.S.C. § 1125(a)*

Because the allegations regarding trademark infringement are sufficient to survive a motion to dismiss, the unfair competition claim survives as well. As a general rule, the same

---

[48] *Abercrombie & Fitch v. Fashion Shops of Kentucky, Inc.*, 363 F. Supp. 2d 952, 957-58 (S.D. Ohio 2005) (citations omitted); *Playboy Enters. v. Universal Tel-A-Talk*, 1998 U.S. Dist. LEXIS 8231, at *6-8 (E.D. Pa. June 3, 1998) (citing *Babbit Elec. v. Dynascan Corp.*, 38 F.3d 1161, 1181 (11th Cir. 1994)).
[49] 15 U.S.C. § 1116(d)(1)(B)(ii) (2006).
[50] *See* Defendants' Motions to Dismiss at 7.

facts that support a trademark infringement claim also support a claim for unfair competition.[51] Accordingly, Defendants' motion to dismiss Haggar's unfair competition claim is denied.

### 4. *Dilution, 15 U.S.C. § 1125(c)*

To properly state a claim for dilution, the plaintiff must show that: (1) its mark is famous or distinctive; (2) the defendant adopted its mark after the mark became famous or distinctive; and (3) the defendant caused dilution of the plaintiff's mark.[52] Haggar's claim of mark dilution properly alleges each of these three elements. First, Haggar provides the registration number and date for each of its trademarks at issue in this case.[53] Registration is *prima facie* proof that the registered mark is distinctive.[54] Second, Haggar alleges that it and its independent dealers and distributors have used the Haggar trademarks at issue since 1934 and 2006, respectively, and that Haggar has invested millions of dollars in advertising and promoting the goods and services sold under those marks.[55] Third, Haggar contends that Defendants' use of its trademarks to promote garments not approved by Haggar "diminishes and lessens the value, selling power, identity and reputation" of the mark by dilution of its "distinctive quality and value."[56] Because Haggar has pled sufficient facts to state a plausible claim to relief on its dilution claim, Defendants' motion to dismiss this claim is denied.

### 5. *Common Law Claims for Trademark Infringement and Unfair Competition*

The analysis for Haggar's common law causes of action is the same as for Haggar's

---

[51] *See Software Publishers Ass'n v. Scott & Scott, LLP*, 2007 U.S. Dist. LEXIS 2666, at *23 (N.D. Tex. Jan. 11, 2007) (Fish, J.) (citing *Marathon Mfg. Co. v. Enerlite Prods. Corp.*, 767 F.2d 214, 217 (5th Cir. 1985)); *Interstate Battery Sys., Inc. v. Wright*, 811 F. Supp. 237, 244 (N.D. Tex. 1993) (citation omitted).
[52] *Id.* at *23-24 (citing *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 670 (5th Cir. 2000)).
[53] *See* Haggar's Complaint at 5-6.
[54] *Test Masters Educ.Servs., Inc. v. Singh*, 428 F.3d 559, 567 (5th Cir. 2005).
[55] *See* Haggar's Complaint at 4-5.
[56] Haggar's Complaint at 13.

federal trademark infringement and unfair competition claims.[57]  The same analysis made above is equally conclusive of these issues, and Defendants' motion to dismiss these state law claims is therefore denied.

### Conclusion

For the reasons above, Defendants' Motion to Dismiss for lack of personal jurisdiction is **DENIED**.  Defendants' Motion to Dismiss for failure to state a claim is **GRANTED** as to the federal trademark counterfeiting claim, and is **DENIED** as to the rest.

**SO ORDERED.**

September 3, 2009.

_____
BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

---

[57] *Interstate Battery*, 811 F. Supp. at 244 (citing *Boston Prof'l Hockey Ass'n v. Dallas Cap and Emblem Mfg.*, 510 F.2d 1004, 1010 (5th Cir. 1974)).